**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Christian Nicholas Orozco,<br><br>Defendant. | No. CR-19-01838-001-TUC-RM (MSA)<br><br>**AMENDED ORDER** |

On November 21, 2023, Magistrate Judge Maria S. Aguilera issued a Report and Recommendation ("R&R"), recommending that this Court find that Defendant violated mandatory condition # 1 of his conditions of probation. (Doc. 86.) Defendant filed an Objection to the R&R (Doc. 88),[1] and the Government responded in opposition (Doc. 90).

**I.   Background**

Defendant pleaded guilty to Transportation of Illegal Aliens for Profit, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i). (Docs. 24, 26.) On February 10, 2020, Defendant was placed on probation for a term of five years.[2] (Doc. 46.) Mandatory condition # 1 of Defendant's probation states that Defendant "must not commit another federal, state or local crime." (*Id.*) In June 2023, Defendant's probation

---

[1] On December 6, 2023, Defendant filed a Motion to Accept Late Filing of Objection to Report and Recommendation, requesting that the Court accept his Objection filed one day after the deadline. (Doc. 89.) The Court granted Defendant's Motion and considered the Objection properly filed. (Doc. 91)

[2] The term of probation was revoked and later reinstated for the original period of five years. (Docs. 48, 66.)

officer filed a Petition to Revoke Probation, alleging that on June 3, Defendant violated mandatory condition # 1 by committing domestic violence assault and domestic violence disorderly conduct, in violation of Arizona Revised Statues §§ 13-1203(A)(1) and 13-2904(A)(1), respectively. (Doc. 67 at 1.) Defendant denied the allegations and requested an evidentiary hearing regarding revocation. (Docs. 75, 76.)

At the evidentiary hearing regarding revocation, the Government called the lead investigator of the alleged domestic violence incident, Tucson Police Department Officer Elizabeth Murphy-Thomas. (Doc. 81 at 25, 30.) Officer Murphy-Thomas testified that she encountered the alleged victim, Lisa Contreras, about twenty minutes after being dispatched. (*Id.* at 30-31.) According to Officer Murphy-Thomas, Contreras initially presented as "crying," "hysterical," "upset," and "breathing heavily" as if she were "going to hyperventilate." (*Id.* at 32–33.) Murphy-Thomas took pictures of Contreras's injuries and recorded the interaction on her body-worn camera. (*Id.* at 31-32, 36–38.). The photographs (Pl.'s Exs. 2- 9) were admitted into evidence without objection. (Doc. 81 at 35, 39.) The body camera footage (Pl.'s Ex. 1) was admitted over Defendant's hearsay objection. (Doc. 81 at 33-34.)

The body camera footage shows Contreras telling Officer Murphy-Thomas that Defendant became angry while they were driving, and he began to continuously hit her in the face and arm with a closed fist and with her purse. (Pl.'s Ex. 1; Doc. 81 at 37-38.) Contreras tried to block Defendant's strikes with her left arm. (Pl.'s Ex. 1; Doc. 81 at 38.) Contreras said "he kept hitting [her] and hitting [her]" to the point that she feared he would give her a concussion. (Pl.'s Ex. 1 at 6:23–6:28.) Defendant then came around to her side of the vehicle, and he "started hitting [her] more." (Pl's. Ex. 1 at 6:31–6:35.) The photographs show swelling, redness, and bruising on Contreras's face, and redness on her shoulder and arm. (Doc. 81 at 37, 39, Pl.'s Exs. 2, 4-9.) Contreras confirmed that she had been living with Defendant, her boyfriend, for the past two years, and that they have a one-year-old daughter together. (Pl.'s Ex. 1; Doc. 81 at 37.) Their child was in the vehicle while Defendant assaulted Contreras. (Pl.'s Ex. 1; Doc. 81 at 38, 41.)

Officer Murphy-Thomas testified that on the same day Defendant was arrested for the assault, Contreras went to the police station and recanted the report she gave to Officer Murphy-Thomas. (Doc. 81 at 49.) From Officer Murphy-Thomas's experience working with domestic violence victims, such recantations are not uncommon. (*Id.* at 49-50.) Murphy-Thomas explained that the "circle of violence" that often characterizes abusive relationships consists of a "tension-building" phase, an "explosion" phase in which violence may occur, and then a "honeymoon" phase where apologies and promises are made. (*Id.* at 49-50.) The honeymoon phase is usually when victims recant, even if the events did indeed happen. (*Id.* at 50.)

The R&R found that Contreras's statements, as captured on the body camera footage, were admissible and persuasive evidence that Defendant committed the alleged crimes. (Doc. 86 at 3.) Magistrate Judge Aguilera determined that many of Contreras's statements were admissible under the excited utterance hearsay exception. (*Id.*) Judge Aguilera further found that the absence of Contreras's live testimony did not violate Defendant's due process right of confrontation. (*Id.* at 3-4.) Thus, the R&R recommended that this Court find that Defendant violated mandatory condition # 1 of his conditions of probation by committing domestic violence assault and domestic violence disorderly conduct. (*Id.* at 6.)

## II. Legal Standard

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation"). Failure to object to the findings and recommendations of the magistrate judge "waives a party's right to review." Fed. R. Crim. P. 59(b)(2).

## III. Discussion

In his Objection to the Report and Recommendation, Defendant attacks Contreras's statements to Officer Murphy-Thomas, which served as the primary evidence

against him. (Doc. 88.) First, Defendant argues Contreras's initial statements to Officer Murphy-Thomas did not fall under the excited utterance exception to the rule against hearsay because "there was a gap in time between the alleged incident" and the statements. (*Id.* at 2.) Next, Defendant asserts that Contreras's statements are untrustworthy because Defendant's record of supervision does not reflect "any domestic violence or assaultive behavior." (*Id.*) Defendant also attempts to cast doubt on Contreras's statements "paint[ing] the defendant as a fentanyl addict" by emphasizing that Defendant's supervision has not indicated drug use "save cocaine and methamphetamine." (*Id.*) Finally, Defendant asserts that the Government purposefully chose not to call Contreras, despite her presence in the courtroom during the hearing, because the Government believed she would lie under oath. (*Id.*) Based on the preceding, Defendant asserts that the Magistrate Judge should have required Contreras to testify at the hearing, and the Government has not proven by a preponderance of the evidence that Defendant violated a condition of his probation. (*Id.* at 4.)

In response, the Government contends that Defendant's claims that Contreras was in the courtroom during the hearing and that the Government "purposely chose not to call her" are misleading. (Doc. 90 at 1-2.) The Government explains that Contreras entered the courtroom shortly before the Government rested. (*Id.* at 2.) By that time, her statements from the camera footage had already been admitted. (*Id.*) Next, the Government argues that, under the excited utterance hearsay exception, "the statement need not be contemporaneous with the event, but within the excitement caused by the event." (*Id.* (citing *United States v. Magnan*, 863 F.3d 1284 (10th Cir. 2017)).)

Defendant is accused of violating mandatory condition # 1 of his conditions of probation by committing domestic violence assault and domestic violence disorderly conduct in violation of Arizona law. (Doc. 67.) Under Arizona law, a person commits assault by "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." A.R.S. § 13-1203(A)(1). A person commits disorderly conduct if, "with intent to disturb the peace" of another person, he "[e]ngages in fighting, violent or seriously

disruptive behavior." A.R.S. § 13-2904(A)(1). These are designated as "domestic violence" crimes if "the victim and the defendant . . . resid[e] or hav[e] resided in the same household," or if "[t]he victim and the defendant have a child in common." *Id.* § 13-3601(A)(1), (2). The Government must prove by a preponderance of the evidence that Defendant committed the foregoing crimes. *See United States v. Ramirez*, 347 F.3d 792, 798 & n.5 (9th Cir. 2003).

First, the Court takes up Defendant's objection to the R&R on the basis that Contreras's initial statements to Officer Murphy-Thomas were not admissible under the excited utterance hearsay exception. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). Under this hearsay exception, courts consider the type of event and the subject of the statements, "[r]ather than focusing solely on the time a statement was made." *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995) (finding statements admissible as excited utterances, where statements were made 30 minutes after the declarant was physically assaulted, the statements concerned the assault, and the declarant was "crying and in a semi-hysterical state" when she made the statements).

Here, the Court rejects Defendant's argument that the excited utterance exception does not apply due to the time between the physical assault and Contreras's statements to Officer Murphy-Thomas. Officer Murphy-Thomas appears to have been dispatched immediately after the assault, and she encountered Contreras within twenty minutes of being dispatched. (Doc. 81 at 30-31.) The body camera footage shows Contreras shaking, crying, and breathing heavily, and her voice wavers and breaks as she speaks. (Pl.'s Ex. 1.) Contreras's statements recounted the assault she had just endured. (Pl.'s Ex. 1.) Considering the subject matter of her statements and the nature of the startling event, the Court finds that Contreras was still under the stress of the physical assault when she described the incident to Officer Murphy-Thomas. Accordingly, the Court concurs with the R&R's finding that Contreras's critical initial statements describing the

physical assault to Officer Murphy-Thomas are admissible as excited utterances.

As the R&R found, this Court also finds that it may consider Contreras's hearsay statements to Officer Murphy-Thomas, even if they do not fall within a hearsay exception or exemption. (*See* Doc. 86 at 3.) The Ninth Circuit has established that hearsay testimony, including reports taken by officers during their investigation, is admissible under certain circumstances in probation revocation hearings. *United States v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005); *see also* Fed. R. Evid. 1101(d)(3) (Federal Rules of Evidence "do not apply to" proceedings "granting or revoking probation"). Still, courts must be mindful that defendants maintain a limited due process right to confront witnesses against them during revocation proceedings. *Hall*, 419 F.3d 985-86; *see also* Fed. R. Crim. P. 32.1(b)(2)(C) (guaranteeing the defendant "an opportunity to…question any adverse witness unless the court determines that the interest of justice does not require the witness to appear").

"To determine 'whether the admission of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it.'" *Hall*, 419 F.3d at 986 (quoting *United States v. Comito*, 177 F.3d 1166, 1170 (9th Cir. 1999)). In assessing the weight to be given the right to confrontation, courts consider factors such as "the importance of the hearsay evidence to the court's ultimate finding" and "the accuracy and reliability of the proffered evidence." *Comito*, 177 F.3d at 1171. The Government's good cause is generally evaluated based on "both the difficulty and expense of procuring [the] witness[] and the traditional indicia of reliability borne by the evidence." *Hall*, 419 F.3d at 988 (quoting *United States v. Martin*, 984 F.2d 308, 312 (9th Cir. 1993)),

Here, although the hearsay evidence is important to the Court's ultimate finding, the accuracy and reliability of Contreras's statements to Officer Murphy-Thomas diminish Defendant's interest in confronting her. Contreras's statements detailing the assault are excited utterances, meaning their "truthfulness is so clear from the

surrounding circumstances that the test of cross-examination would be of marginal utility." *Idaho v. Wright*, 497 U.S. 805, 820 (1990); *see also Hall*, 419 F.3d at 987 ("[L]ong-standing exceptions to the hearsay rule that meet the more demanding requirements for criminal prosecutions should satisfy the lesser standard of due process accorded the respondent in a revocation proceeding."). Furthermore, Contreras's statements bear indicia of reliability in that they are independently corroborated by Officer Murphy-Thomas's observations and the photographs depicting redness and swelling on Contreras's face, shoulder, and arm. (Doc. 81 at 37; Pl.'s Exs. 2, 4-9.) Although the Government has not shown it would be difficult to secure Contreras's testimony at a hearing[3], the hearsay evidence bears sufficient indicia of reliability to show good cause for her absence. Upon weighing Defendant's interest in confronting Contreras against the Government's good cause for not calling her, the Court finds that the Magistrate Judge properly admitted and considered Contreras's hearsay statements.

Defendant argues that Contreras should have been required to testify because her statements are untrustworthy. However, the fact that Contreras later said Defendant did not assault her does not persuade this Court that her domestic violence report was false. As previously noted, Contreras's initial statements are excited utterances that are inherently reliable and corroborated by the evidence of her injuries. In addition, it is reasonable to infer that Contreras's recantation is, sadly, attributable to the circle of violence described by Officer Murphy-Thomas. Likewise, it is of little import that Defendant's record of supervision does not reflect "any domestic violence or assaultive behavior."[4] (Doc. 88 at 2.)

---

[3] The Court concurs with the Government's description that Contreras entered the courtroom towards the end of the hearing, after Judge Aguilera admitted her statements. (Doc. 81 at 57.) Judge Aguilera made clear to Contreras that she had not been called to testify; however, as the victim of the allegation, Judge Aguilera asked if Contreras wanted to say anything. (*Id.* at 60.) Contreras stated that she "just came to observe" and that "this was just all a mistake. It never happened, never happened. The bruises, the scratches were from work earlier that day." (*Id.*) Contreras did not testify. (*Id.* at 60-61.)

[4] At the hearing, Officer Murphy-Thomas testified that Contreras stated that Defendant had hit before, but not this bad. (Doc. 81 at 59; Pl.'s Ex. 1.) This statement indicates that Contreras may not have reported previous assaults by Defendant.

Defendant also attempts to diminish the accuracy of Contreras's statements by asserting that she tried to falsely paint Defendant as a "fentanyl addict" when that is not his drug of choice. (Doc. 88 at 2.) The R&R's finding on this point is worth repeating:

> [Contreras] told Officer Murphy that Defendant was a "drug addict" and had "overdosed on [her] twice in the past two years." (Pl.'s Ex. 1 at 11:00–11:09.) When asked what he uses, she said, "the pills, I don't know," and then said, "I caught him *one time* with the blues." (*Id.* at 11:11–11:18.) Thus, she never stated that Defendant was a frequent fentanyl user or that Defendant had overdosed twice on fentanyl.

(Doc. 86 at 5) (emphasis added). At the evidentiary hearing, Probation Officer Arleen Morales testified that while under Pretrial Services, Defendant tested positive for cocaine and methamphetamine. (Doc. 81 at 12.) While on probation, Defendant had no-shows and diluted samples. (*Id.*) Defendant's argument that Contreras falsely painted him as a "fentanyl addict" is unavailing. The Magistrate Judge did not violate Defendant's due process right of confrontation by admitting Contreras's hearsay statements in place of her live testimony.

Having established that Contreras's statements to Officer Murphy-Thomas are admissible, the Court finds her report of Defendant's physical assault to be persuasive evidence that Defendant committed the alleged crimes. Contreras's statements, along with the admitted exhibits, establish that Defendant intentionally caused her physical injury and engaged in violent behavior with the intent to disturb her peace. The evidence also makes clear that Contreras lived with Defendant, and that the two have a child together, giving rise to the type of relationship necessary to establish a domestic violence crime. In sum, the Government has proven by a preponderance of the evidence that Defendant committed domestic violence assault and domestic violence disorderly conduct in violation of A.R.S. § 13-1203(A)(1) and A.R.S. § 13-2904(A)(1). Based on the foregoing, the Court finds that Defendant violated mandatory condition # 1 of his conditions of probation.

. . . .

**IT IS ORDERED** that Defendant Christian Nicholas Orozco's Objection (Doc. 88) is **overruled**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (Doc. 86) is **accepted and adopted in full**. The Court finds that Defendant violated mandatory condition # 1 of his probation, as alleged in the Petition to Revoke Probation (Doc. 67).

**IT IS FURTHER ORDERED** that a Final Disposition Hearing is set for **March 4, 2024 at 1:15 p.m.**, before the Honorable Rosemary Márquez. Probation Officer Arleen Morales is directed to prepare a disposition report.

Dated this 5th day of February, 2024.

_____
Honorable Rosemary Márquez
United States District Judge